IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JASON GUTTERMAN and
BENJAMIN GUTTERMAN,

      Plaintiffs,

v.                              Case No. 5:25-cv-230-AW-MJF

CITY OF LYNN HAVEN, et al.,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT JOSH NEWSOM'S MOTION TO DISMISS

Plaintiffs, Jason and Benjamin Gutterman ("Plaintiffs"), by and through undersigned counsel, file this Response in Opposition to Defendant Josh Newsoms's("NEWSOM") Motion to Dismiss (Doc. 36), brought pursuant to Federal Rule of Civil Procedure 12(b)(6), and as grounds state:

## INTRODUCTION

A man was arrested, and his minor son was detained, while they were recording on a public sidewalk in broad daylight. It is undisputed that they were not recording at a school (i.e., messing with the students), and there was no evidence of any nefarious intent. The constitutional right to record in public has

been clearly established in this Circuit since the undersigned was in grade school. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

In 2018, Florida's First District Court of Appeal recognized: "Every Circuit Court of Appeals to address this issue (First, Fifth, Seventh, Ninth, and Eleventh) has held that there is a First Amendment right to record police activity in public." *See Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995). *Pickett v. Copeland*, 236 So. 3d 1142, 1147 (Fla. 1st DCA 2018).

The sidewalk, on the side of the road, is a traditional public forum, and has been since before the undersigned could walk. *See Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988) (" '[T]ime out of mind' public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum."). The Supreme Court has repeatedly held that public streets and sidewalks are traditional public fora. *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988); *Perry Education Ass'n*., 460 U.S. at 44, 103 S.Ct. at 954. *Int'l Caucus of Labor Committees v. City of Montgomery*, 111 F.3d 1548, 1550 (11th Cir. 1997)

2

By now, any law enforcement officer should understand that citizens have the right to record in public—particularly where, as here, Plaintiffs had professional camera equipment and were on the public sidewalk. The fact that two American citizens were arrested for recording on a public sidewalk is the tort-version of *res ipsa loquitur*—malice inferred from conduct. At the very least, these allegations warrant proceeding to discovery so the parties can develop the full factual record as to why these officers would make such a major faux pas. The encounters are captured on body-worn and video camera, and none of the parties should be confused about the operative facts of this case.

Defendant Josh Newsom's motion to dismiss under Rule 12(b)(6) should be denied because the Complaint alleges specific facts showing Newsom's personal involvement in clear violations of Plaintiffs' First and Fourth Amendment rights. All three §1983 counts against Newsom – Count I (First Amendment free speech), Count II (First Amendment retaliation), and Count III (Fourth Amendment false arrest) – are adequately pleaded with factual detail. At this stage, the Court must accept the Complaint's allegations as true and draw all reasonable inferences in Plaintiffs' favor. Those allegations show that Officer Newsom actively participated in an unlawful arrest without probable cause, targeting Plaintiffs' protected journalistic activity, such that dismissal is unwarranted.

RULE 12(B)(6) STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case[1]. To survive dismissal, a complaint must contain enough factual matter, accepted as true, to state a plausible claim for relief. All well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. No fact-finding or weighing of evidence is appropriate at this stage. Applying this standard here, the Court must credit Plaintiffs' detailed factual allegations – including Officer Newsom's own actions in seizing and arresting Jason Gutterman – and determine whether those facts, if proven, would amount to constitutional violations. As shown below, the Complaint easily meets this standard for each claim. Moreover, qualified immunity and the "fellow officer rule" cannot justify dismissal at the pleading stage because the allegations, taken as true, show Newsom violated clearly established rights without arguable probable cause.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[1] Although, of course, the case is meritorious otherwise it would not have been brought.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I. Officer Newsom's Personal Participation in the Unlawful Arrest is Plausibly Alleged

At the outset, the Complaint leaves no doubt that Newsom was personally involved in the arrest and the constitutional deprivations at issue. Far from being a passive bystander, Newsom directly participated in Jason Gutterman's arrest: as alleged, *"NEWSOM assisted in the unlawful arrest of Jason Gutterman by grabbing [him] by his hands."* He then took charge of the detention — *"It was apparent that NEWSOM was taking the lead on the arrest process and proceeded with the unlawful arrest.".* These factual averments (Complaint ¶¶43, 47–48) show that Newsom physically seized Jason (a clear Fourth Amendment seizure) and actively carried out the arrest, not merely following orders from others. Jason Gutterman was even placed in Newsom's patrol car during the arrest process. Accepting these facts as true, Newsom was an integral participant in every sense.

This personal involvement ties Newsom to each constitutional violation alleged. By grabbing and restraining Jason without cause, Newsom helped deprive Plaintiffs of their liberty in violation of the Fourth Amendment (Count III). By leading an arrest that silenced and punished Plaintiffs' filming activity, he chilled

their First Amendment rights (Count I) and joined in a punitive response to protected expression (Count II). At the pleading stage, these allegations must be taken as true and viewed in Plaintiffs' favor. They easily support a plausible inference that Newsom is liable as a direct participant. Any suggestion by Newsom that his role was "ministerial" or that he was merely present is flatly contradicted by the Complaint's detailed description of his conduct. Accordingly, Newsom cannot be dismissed for lack of personal involvement. The Complaint sufficiently alleges that he *"assisted in"* (Compl. ¶¶43) and *"proceeded with"* (Compl. ¶¶48) the unconstitutional arrest, which is all that is required to hold him accountable under §1983 at this juncture.

As an aside, this is not a case where an officer arrived as backup after the fact and simply followed other officers' directions in reasonable reliance on their assessment. Officer Newsom was present before the arrest and had the opportunity to observe Plaintiffs on a public sidewalk using professional camera equipment. Under these circumstances, any officer who arrested Plaintiffs—or participated in their arrest or detention—was either plainly incompetent or intentionally violated the Constitution, and the law protects neither.

## II. Qualified Immunity Does Not Bar Plaintiffs' Claims at this Stage

Officer Newsom next argues that qualified immunity ("QI") shields him from all three counts. This argument fails because the Complaint alleges facts showing that Newsom violated clearly established constitutional rights of the Plaintiffs. Qualified immunity protects government officers only if their conduct did not violate a clearly established right of which a reasonable officer would have known. Here, taking Plaintiffs' allegations as true, Newsom's actions violated both the First Amendment and the Fourth Amendment in ways that any reasonable officer in November 2021 would understand were unlawful. Furthermore, the facts alleged show no "arguable" probable cause for the arrest – a crucial point, since even for QI, an officer must at least have arguable probable cause to avoid liability for a false arrest. We address each aspect in turn.

### 1. No Arguable Probable Cause – Arrest Under an Unconstitutional Statute:

The Fourth Amendment right to be free from arrest without probable cause was clearly established at the time of this incident. The Complaint affirmatively alleges that *"acting without probable cause or even arguable probable cause,"* (Compl. ¶¶87) Newsom and others arrested Plaintiffs for an offense they did not commit – *"a crime that was no longer constitutionally enforceable in Florida.".* In

particular, Jason Gutterman was arrested under Florida's "School Safety Zone" law, Fla. Stat. §810.0975(2)(b), which had been declared unconstitutional years earlier in *Gray v. Kohl*, 568 F. Supp. 2d 1378 (S.D. Fla. 2008). The Complaint expressly notes that in 2008 a federal court held subsections (2)(a) and (2)(b) of §810.0975 "unconstitutionally vague" and "permanently enjoined" the State of Florida and its officers from enforcing these subsections. Despite this, Officer Newsom joined in arresting Jason for violating §810.0975(2)(b) – *"one of the same subsections that was declared unconstitutionally vague in Gray."* By 2021, any reasonable officer should have known that this statute was invalid and unenforceable. Indeed, the Assistant State Attorney who reviewed the arrest quickly dropped the charge, specifically citing the fact that the statute *"was found unconstitutional"* by a federal judge who enjoined its enforcement. Thus, from the standpoint of clearly established law, Newsom had fair warning that arresting someone under §810.0975(2)(b) – especially for non-nefarious conduct on a public sidewalk – was unlawful. There is a difference between a non-binding precedent and an actual injunction. In this case, an injunction prohibited the enforcement of the statute.

Even setting aside the *Gray v. Kohl* decision, the allegations show an obvious lack of probable cause for any offense. Plaintiffs were not engaged in any criminal activity at all; they were simply filming a UPS facility from a public area. The

Complaint states that *"there was no probable cause that [Plaintiffs] were in violation of the statute, even if it were constitutional, since they were clearly there for legitimate purposes, engaging in protected First Amendment activity on a public sidewalk."*(Compl. ¶¶64)  In other words, no reasonably competent officer could believe that arresting Plaintiffs under the school safety zone law – given they were not at a school and had a lawful purpose to be in the zone – was constitutional or supported by arguable probable cause. This is reinforced by the allegations that a supervising officer on scene (Sgt. Sumerall) *"expressed concern about the legitimacy of the arrest"[2]* (Compl. ¶¶53) and another deputy openly acknowledged the **"illegality"** of what was being done. (Compl. ¶¶58)[3]  Taking these facts as true, Officer Newsom could not have objectively believed the arrest was lawful.

Therefore, at the pleading stage, Newsom is not entitled to qualified immunity on the Fourth Amendment false arrest claim (Count III). The Complaint alleges a patent violation of Jason's Fourth Amendment rights – an arrest without arguable probable cause – which defeats qualified immunity at this juncture.

---

[2] As the Kids today would say, "He got caught on a hot mic saying the quiet part out loud."

[3] The point is that more than one officer said out loud, there were concerns about the arrest being legal…. Certainly, at the pleading stage, that's enough for an inference that all officers similarly situated (like Newsom) could recognize this arrest was illegal.

**2. Violation of Clearly Established First Amendment Rights:**

The motion to dismiss also ignores that Plaintiffs have alleged a violation of their First Amendment rights to record and gather information in public. It has long been clearly established that individuals have a First Amendment right to film and document matters of public interest – including the activities of public officials – in public spaces. As the Eleventh Circuit held in *Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000)*, *"t*he First Amendment protects the right to gather information about what public officials do on public property", which "specifically" includes "a right to record" such matters.

Here, Plaintiffs Jason and Benjamin Gutterman were engaged in constitutionally protected news-gathering activity: peacefully recording video in a public forum (a sidewalk) about a matter of public concern. By arresting and detaining them without lawful cause, Officer Newsom directly infringed their First Amendment freedom to document and disseminate information. This gave rise to Count I, which alleges Newsom and others took actions *"to chill the exercise of free speech"* (Compl. ¶¶68) and wrongfully arrested Plaintiffs *"while [they were] exercising their protected…First Amendment rights."* (Compl. ¶¶69) There can be no question that retaliating against or preventing individuals from filming in public violates clearly established First Amendment principles.

10

In fact, the Seventh Circuit has described it as "an extreme position" to assert that openly recording on public streets is "wholly unprotected" by the First Amendment. Am. Civil Liberties Union of Illinois v. Alvarez, 679 F.3d 583, 594 (7th Cir. 2012) No reasonable officer would think he could lawfully arrest citizens solely for exercising their right to film in a public place. And what this officer cannot do is hide behind a statute, (that just happened to be enjoined), for which there was no arguable probable cause to arrest under, as a pretext to arrest someone for filming in public.

Moreover, the facts alleged support that Newsom's actions were done because of Plaintiffs' expressive activity, further underscoring the First Amendment violation. The Complaint specifically alleges that "Defendants knew that Plaintiffs were 'First Amendment Auditors' and their dislike of the exercise of that protected First Amendment activity was a basis for the retaliatory animus."(Compl. ¶¶79).

This is a well-pleaded fact, not some baseless claim. What the plaintiffs were doing was clear; they had professional camera equipment. If we were to ask 100 police officers how they feel about "Auditors," common sense would suggest "invite them to Christmas Dinner" would not be the response. We are at the pleading stage, Plaintiff gets that inference. Especially in light of how clearly established the protected activity they were engaged in is in case law.

When an officer intentionally targets someone for engaging in protected speech, it offends a clearly established right to be free from such retaliation. As discussed in the next section, the Complaint details that Newsom and his co-defendants acted with *"retaliatory animus"* (Compl. ¶¶76-79) toward Plaintiffs' filming. The right to be free from a retaliatory arrest (absent probable cause) is also clearly established – particularly under the circumstances pled here, where others not filming were left alone (satisfying the standard set forth in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), discussed below). In short, taking Plaintiffs' allegations as true, Officer Newsom violated First Amendment rights that were clearly established in law and obvious in application. Therefore, he cannot cloak himself in qualified immunity to avoid accountability at this stage.

### 3. Qualified Immunity is Unwarranted on a Motion to Dismiss:

Finally, it bears emphasis that resolving qualified immunity often involves fact-intensive inquiries (e.g. what a reasonable officer knew or should have known) that are ill-suited for a motion to dismiss. Dismissal on QI is only appropriate if the complaint fails to allege a violation of a clearly established right. Here, as shown above, the Complaint does allege such violations in detail. The absence of even arguable probable cause (an objective standard) is pled plainly. The use of an obviously unconstitutional statute to effectuate the arrest is also pled and supported by a prior court decision. And the targeting of protected First Amendment conduct

is pled with specific facts suggesting an improper motive and lack of any legitimate justification. These allegations must be accepted as true, and they defeat qualified immunity at this stage. If discovery were to reveal a different factual scenario, Newsom could renew the QI argument on summary judgment. But on the face of the Complaint, Plaintiffs have adequately shown that Newsom's conduct violated clearly established rights. Accordingly, qualified immunity is not a basis for dismissal of Counts I, II, or III.

## III. The "Fellow Officer Rule" Does Not Warrant Dismissal on the Pleadings

Newsom also invokes the "fellow officer rule," suggesting he should be excused from liability because he relied on the Bay County deputies' determination of probable cause. This argument cannot carry the day at the motion-to-dismiss stage, for several reasons. First, it conflicts with the Complaint's factual allegations. Plaintiffs allege that Newsom did not merely defer to others, but instead personally facilitated and led an arrest he knew (or should have known) was wrongful. Lets be plain about it, Newsom knew Plaintiffs were First Amendment Auditors standing on a public sidewalk. To arrest them for anything is something only a plainly incompetent law enforcement officer would do…. Or one who is intentionally violating constitutional rights. An Officer cannot participate in a plainly illegal arrest and claim, as a defense, that another officer (who is not even employed by his agency) told him to. Nothing in the complaint shows this to be a

fast developing situation where a back up officer arrives and has to make a split second decision. The complaint, as read in the light most favorable to the Plaintiff, (and has the benefit of actually being true) was that this was a slow developing situation where Officer Newsom had plenty of time to see, hear, and understand what was going on before deciding to participate in an illegal detention and arrest.

The Complaint paints a picture of an officer who became an active participant in an unconstitutional arrest, *not* one who innocently arrived after the fact and accepted another officer's credible assessment. Indeed, Newsom arrived on scene and immediately joined in the arrest without any valid basis, grabbing Jason Gutterman and taking charge. The factual narrative (which must be credited at this stage) even has a senior Lynn Haven officer, Sgt. Sumerall, raising doubts about the arrest's legitimacy in Newsom's presence (and who knows what was said when Body Cameras started being turned off and private side conversations were had).

Thus, far from showing that Newsom had no reason to question what was happening, the Complaint suggests any reasonable officer in his position would have realized the lack of cause. Under these alleged facts, Newsom cannot blind himself to obvious illegality and then claim safe harbor under the fellow officer rule.

Second, the fellow officer (or "collective knowledge") rule is principally an evidentiary doctrine that allows one officer to rely on information from others to establish probable cause. It does not automatically immunize an assisting officer who helps effectuate an unlawful arrest. If the information relied upon is flawed or the arrest is clearly without legal justification, an officer who assists can still be held liable if he knew or should have known of the lack of probable cause. The Eleventh Circuit authority Newsom cites (e.g., *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941 (11th Cir. 2008)) involved situations where assisting officers had no reason to doubt their fellow officer's information.

 By contrast, here Plaintiffs allege ample facts indicating Newsom had reason to doubt the validity of the arrest. Again, big professional camera equipment, public sidewalk, Deputy asking for "press credentials." The Complaint makes clear that the BCSO deputies' probable cause was deficient (again, even if the statute was constitutional and not subject to injunction there was still not arguable probable cause it was violated), and that Newsom was **"taking the lead"** (Compl. ¶¶48) in the arrest despite the illegality. It also alleges that the arrest was made absent any obvious unlawfulness only from Newsom's perspective – but the very next facts show multiple red flags about lawfulness (the nature of Plaintiffs' conduct and the prior injunction against the statute) which Newsom ignored. In short, whether Newsom *reasonably* relied on his fellow officers is a factual

question that cannot be resolved in his favor on the pleadings. Plaintiffs have alleged that he did not act in good faith reliance but rather facilitated an arrest that was clearly void of probable cause.

Finally, importantly for Rule 12(b)(6), the fellow officer rule cannot override the requirement to accept Plaintiffs' allegations as true. The Complaint alleges that Newsom *"arrested, detained, and/or assisted in the arrest"* (Compl. ¶¶43, 78, 87) of Plaintiffs "without probable cause or even arguable probable cause."* Accepting that as true (as the Court must), Newsom's reliance on any fellow officer's assessment was not objectively reasonable. These allegations put Newsom on notice of his own potential liability; they preclude dismissing him by simply crediting his version that he was an uninformed helper. At most, the fellow officer rule is an affirmative defense or argument that might be raised on summary judgment if supported by evidence (e.g. proof that Newsom was not aware of the circumstances). It is not a basis to dismiss a well-pled complaint that claims Newsom himself violated the law. Thus, Newsom's attempt to escape liability via the fellow officer rule fails at this stage. The Court should allow the case to proceed to discovery, where the precise extent of Newsom's knowledge and reliance (or lack thereof) can be explored.

**IV. Plaintiffs Adequately Plead a First Amendment Retaliation Claim (Count II)**

Count II of the Complaint alleges First Amendment retaliation, and Newsom seeks dismissal claiming a failure to plead this claim as to him. This argument is unavailing. To state a §1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege: **(1)** that he engaged in protected speech or activity; **(2)** that the government defendant's actions would chill a person of ordinary firmness from continuing that activity; and **(3)** that the defendant's adverse action was substantially motivated by the plaintiff's protected conduct (i.e. a causal connection). The Complaint here plainly satisfies each element, including as against Officer Newsom.

**Protected Activity:** Plaintiffs were undoubtedly engaged in protected First Amendment activity. They are independent photojournalists who were recording video in a public forum as part of their newsgathering work. The Eleventh Circuit and other courts recognize such filming and newsgathering as core First Amendment-protected conduct. Indeed, Defendants do not dispute that Plaintiffs' filming was protected speech.

**Adverse Action that Would Chill Speech:** The adverse action alleged is Plaintiffs' arrest and detention on November 9, 2021. Being handcuffed, arrested,

and (in Jason's case) jailed is a quintessential adverse action that would deter a

person of ordinary firmness from exercising their speech rights in the future. The

Complaint specifically alleges that Newsom and the other defendants *"t[ook]*

*adverse actions that would chill a person of ordinary firmness from continuing in*

*the exercise of protected rights under the First Amendment."* (Compl. ¶¶76-78)

This element is clearly met: an unlawful arrest is more than sufficient to chill First

Amendment activity.

**Retaliatory Motive / Causation:** The Complaint further alleges facts

supporting a reasonable inference that **Plaintiffs' filming was the motivating**

**factor for the arrest.** Plaintiffs plead that the defendants (including Newsom)

*"acted to intimidate, harass, and ultimately arrest Plaintiffs as they sought to*

*exercise their First Amendment rights by recording"* (Compl. ¶¶77) the UPS

facility. They also allege explicitly that *"Defendants knew that Plaintiffs were*

*'First Amendment Auditors' and their dislike of the exercise of that protected First*

*Amendment activity was a basis for the retaliatory animus."* (Compl. ¶¶79)  In

other words, the officers were aware that Plaintiffs were asserting First

Amendment rights (filming and refusing to identify themselves without cause), and

the officers did not like it – leading them to punish Plaintiffs via arrest. The

Complaint goes on to provide concrete, objective evidence of retaliatory causation:

it alleges that similarly situated individuals who were not engaged in the same

protected activity were not arrested, even though those individuals were technically in the same vicinity of the school.

Specifically, numerous other people were near the school around the same time (just after school hours) and thus could have been deemed in violation of the safety zone statute's literal terms, yet *"none of them were engaged in protected activity like the Plaintiffs"* (Compl. ¶¶80) and none were arrested. This is powerful circumstantial evidence that Plaintiffs were singled out *because* of their First Amendment-protected conduct. Under the Supreme Court's decision in *Nieves v. Bartlett, 587 U.S. 391, 406 (2019)*, if a plaintiff presents "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," then the claim of retaliatory arrest can survive even if probable cause might have existed for an offense (even though in this case there was not even arguable probable cause for a violation of the school safety zone). Here, Plaintiffs have done exactly that in their pleading – they've identified a disparity in treatment that strongly suggests a retaliatory motive.

Officer Newsom contends that the Complaint lacks allegations of *his* personal motive or knowledge of Plaintiffs' speech. But the pleading, read as a whole, permits the inference that Newsom shared the retaliatory intent of the overall law enforcement response. All defendants on scene are alleged to have had such animus, and Newsom in particular is alleged to have actively participated in

the arrest without cause. It is not necessary at the pleading stage for Plaintiffs to produce a smoking-gun admission of Newsom's mindset; circumstantial evidence and reasonable inferences suffice. The context here supports an inference that Newsom knew Plaintiffs were filming (they had large camera equipment out and identified themselves as journalists) and that he chose to assist in an arrest lacking any legitimate basis, from which a factfinder could conclude that he did so in retaliation for the filming. Notably, the Complaint describes a private conversation between Newsom and Sgt. Sumerall when Sumerall arrived. Immediately after that conversation, the arrest proceeded despite Sumerall's concerns – suggesting Newsom was involved in the decision to push forward.

One can infer that in that discussion, the only "justification" for proceeding was displeasure with Plaintiffs' refusal to stop filming or identify themselves (i.e., frustration with their assertion of rights). At the very least, whether Newsom acted with a retaliatory motive is a fact question inappropriate for resolution on a motion to dismiss. The Complaint alleges enough facts to raise a plausible inference of such motive, which is all that is required at this stage.

Furthermore, Newsom's argument overlooks that joint participation in a retaliatory scheme can make each participant liable. If a group of officers collectively agrees – explicitly or tacitly – to arrest someone because of their protected activity, each officer is responsible for the retaliation even if their

individual role was only part of the whole. The Complaint here indicates a coordinated effort by Lynn Haven police and Bay County deputies to stop Plaintiffs' First Amendment auditing. It is alleged, for example, that Newsom and Sumerall conferred privately, then BCSO "resumed lead" and completed the arrest. This suggests Newsom's involvement in the decision-making process. All told, Plaintiffs have more than adequately pled that their protected conduct was a but-for cause of the arrest, which is the essence of a First Amendment retaliation claim.

In sum, Count II should proceed against Newsom. The Complaint pleads facts showing each required element of retaliatory arrest, and it specifically ties Newsom to the retaliatory action. The law does not demand granular proof of each officer's subjective motive at the pleadings stage – it requires a plausible allegation, which Plaintiffs have delivered. Given the allegations of open animus toward "First Amendment Auditors" and differential treatment of others, the retaliatory intent behind Plaintiffs' arrest is not just conceivable but likely. The Court must accept those allegations as true now. Therefore, Newsom's request to dismiss the First Amendment retaliation claim should be denied.

## <u>CONCLUSION</u>

Officer Newsom's motion to dismiss should be denied in its entirety. The Complaint alleges in detail that Newsom violated Plaintiffs' clearly established

rights by personally orchestrating and carrying out an arrest without probable cause and in retaliation for protected speech. At this Rule 12(b)(6) stage, the Court must credit those allegations and give Plaintiffs the benefit of all favorable inferences. Doing so, it is evident that all three counts against Newsom are sufficiently pled. Newsom is not entitled to qualified immunity on the face of the Complaint, nor can he escape liability by deflecting blame to fellow officers. Because the Plaintiffs have stated plausible claims for relief under the First and Fourth Amendments, the motion to dismiss should be denied, and the case should proceed to discovery on the merits of these claims.

## CERTIFICATE OF WORD COUNT

I certify that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 4727 words.

Respectfully submitted this 6 day of January 2026.

/s/Kevin Alvarez
Kevin R. Alvarez, B.C.S.
Board Certified in Criminal Trial Law
Law Office of Kevin Alvarez P.A.
522 East Park Ave, Suite 100
Tallahassee, Florida 32301
FBN: 88527
Email: kevinalvarezesq@gmail.com
850-559-0050
ATTORNEY FOR PLANTIFF JASON AND BENJAMIN GUTTERMAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following on this 6th day of January 2026:

**JEFFREY JAMES GROSHOLZ**
**JOHN DAVID MARSEY**
**KAYLA ELIZABETH PLATT RADY**
RUMBERGER KIRK & CALDWELL PA - TALLAHASSEE FL
101 NORTH MONROE STREET
SUITE 1050
TALLAHASSEE, FL 32301
850-222-6550
Email: jgrosholz@rumberger.com
Email: dmarsey@rumberger.com
Email: krady@rumberger.com
ATTORNEYS FOR DEFENDANT CITY OF LYNN HAVEN

**ALYSSA M YARBROUGH**
**JENNIFER ALANE HAWKINS**
**WILLIAM G WARNER**
WARNER LAW FIRM - PANAMA CITY FL
501 W 11TH STREET SUITE A
PANAMA CITY, FL 32401
850-784-7772
Email: alyssayarbrough@warnerlaw.us
Email: jenniferhawkins@warnerlaw.us
Email: billwarner@warnerlaw.us
ATTORNEYS FOR DEFENDANT SHERIFF AND DEPUTIES

**JOSHUA BRIAN WALKER**
WALKER REVELS GRENINGER PLLC - ORLANDO FL
189 S ORANGE AVENUE
SUITE 1600
ORLANDO, FL 32801
407-789-1830
Fax: 321-251-2990
Email: jwalker@wrg.law
*ATTORNEY FOR DEFENDANT SUMERALL*

**BEN A ANDREWS**
**CHAD WAYNE DUNN**
PENNINGTON P.A.
215 S MONROE ST
SUITE 200
TALLAHASSEE, FL 32301
850-222-3533
Email: bandrews@penningtonlaw.com
Email: cdunn@penningtonlaw.com
ATTORNEYS FOR DEFENDANT NEWSOM

By:

/s/Kevin Alvarez
Kevin Alvarez, B.C.S.
Board-Certified Criminal Trial Law
Florida Bar Number 88527
Law Office of Kevin Alvarez P.A.
522 East Park Ave. Suite 100
Tallahassee, Florida 32301
Phone (850) 559-0050
Fax: (850) 999-7563
KevinAlvarezesq@gmail.com
Attorney for Plaintiff's JASON and BENJAMIN GUTTERMAN