IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JASON GUTTERMAN and
BENJAMIN GUTTERMAN,

      Plaintiffs,

v.                                                      Case No. 5:25-cv-230-AW-MJF

CITY OF LYNN HAVEN, et al.,

      Defendants.

_____/

### **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT**

### **GRAINGER'S MOTION TO DISMISS AMENDED COMPLAINT [ECF 53]**

Plaintiffs JASON GUTTERMAN and BENJAMIN GUTTERMAN, by and

through undersigned counsel, respectfully oppose Defendant Ralph Grainger's

Motion to Dismiss [ECF 53] and state as follows:

### **INTRODUCTION**

Defendant Grainger moves to dismiss Counts I (First Amendment Retaliation)

and II (Fourth Amendment False Arrest) of the Amended Complaint [ECF 43],

arguing that he is entitled to qualified immunity and that the video evidence negates

Plaintiffs' claims.[1] Both arguments fail. Officer do not have qualified immunity when

---

[1] Grainger's motion invokes Rules 8(a)(2) and 10(b) in its caption but does not
develop any argument that the Amended Complaint is a shotgun pleading.

1

they knowingly make an arrest without arguable probable cause. The video evidence submitted is not all of the video evidence in the case. Defendants did not supply the Court with all of the videos in the case and the videos provided do not refute plaintiffs claims.

Grainger was not a bystander who arrived late and passively relied on another officer's judgment. He was the primary investigating officer who arrived on scene, personally received Jason Gutterman's explanation that he was a photojournalist filming UPS, personally confirmed with Deputy Swann that Plaintiffs were not filming at the school, personally decided to arrest both Plaintiffs before that confirmation, and personally effectuated the arrest of JASON and directing the arrest of BENJAMIN — all while possessing firsthand knowledge that Plaintiffs had a legitimate purpose for being where they were. The Amended Complaint sets forth these facts in granular, paragraph-by-paragraph detail, attributing specific conduct to Grainger individually. The motion should be denied.

---

Accordingly, Plaintiffs do not address that issue here. To the extent the Court considers the question sua sponte, the Amended Complaint gives Grainger clear notice of the claims against him and the grounds upon which each claim rests. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). Every material allegation of Grainger's individual conduct is set forth in sequentially numbered paragraphs and each count separately identifies the defendants against whom it is asserted.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint may not be so dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Lopez v. First Union Nat. Bank of Florida, 129 F.3d 1186, 1189 (11th Cir. 1997)(internal citations omitted).

## ARGUMENT

## I. GRAINGER IS NOT ENTITLED TO QUALIFIED IMMUNITY.

### A. The Qualified Immunity Framework

Qualified immunity protects government officials performing discretionary functions from civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009); The protection of qualified immunity

3

applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Once the defendant demonstrates he was acting within his discretionary authority, the burden shifts to the plaintiff to show (1) a constitutional violation and (2) that the right was clearly established at the time. Id. at 232. Plaintiffs do not dispute that Grainger was performing a discretionary function. The analysis therefore turns on whether the Amended Complaint plausibly alleges violations of clearly established rights. It does.

**B.  The Amended Complaint Plausibly Alleges the Absence of Probable Cause — and Even Arguable Probable Cause**

For both the false arrest and First Amendment retaliation claims, Plaintiffs bear the burden of demonstrating the absence of probable cause. Nieves v. Bartlett, 587 U.S. 391, 404 (2019). Qualified immunity applies only if the officer had at least arguable probable cause — meaning a reasonable officer in the same circumstances and possessing the same knowledge could have believed probable cause existed. Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998).

The relevant statute, § 810.0975(2)(b), Fla. Stat., makes it unlawful to enter or remain in a school safety zone (within 500 feet of a school) during the designated time period when the person "does not have legitimate business in the school safety zone." The statute thus contains an express exception for persons with a legitimate

4

business purpose. Whether an individual lacks "legitimate business" is a critical element of the offense and without proof that this element is satisfied, there is no probable cause.

The Amended Complaint alleges detailed facts, which must be accepted as true, establishing that Grainger personally knew Plaintiffs had a legitimate purpose for being in the zone:

First, Jason Gutterman told Grainger directly that he was working on a video of UPS for his work as a photojournalist. [ECF 43 ¶ 23]. Grainger's own response — "That's all you had to tell them, man" — demonstrates his initial acceptance of Plaintiffs' stated purpose. [ECF 43 ¶ 24]. This statement is significant because it reflects Grainger's contemporaneous understanding that Plaintiffs' explanation was sufficient, and that the encounter should have ended there.

Second, Deputy Swann, who was the first officer on scene, the one who called for backup, and the one who had the most time observing Plaintiffs, confirmed to Grainger that Plaintiffs had not been filming at A. Crawford Mosley High School and were filming at the UPS facility. [ECF 43 ¶ 34]. Grainger himself later confirmed to another deputy that he thought Plaintiffs were "filming down the road and not at the school." [ECF 43 ¶ 79]. This is Grainger's own admission, captured on body camera, that he knew Plaintiffs were not engaged in conduct directed at any school.

Third, Plaintiffs had visible, large professional camera equipment on a public sidewalk pointed at the UPS facility, making their purpose self-evident to any observer. [ECF 43 ¶¶ 15, 177].

Fourth, during a lengthy discussion among Grainger, Newsom, Sumerall, and other deputies outside of Plaintiffs' earshot, it was conveyed that Plaintiffs were not filming at the school, that they were photojournalists, and that they had professional camera equipment. [ECF 43 ¶ 178].

Fifth, Sumerall, the City of Lynn Haven Police Sergeant who arrived on scene, admitted he would not arrest Plaintiffs because there was no evidence they were doing anything nefarious, they were simply filming at the UPS facility, and they were not at any school. [ECF 43 ¶¶ 119-121]. If Sumerall, a sergeant from a different agency, recognized that the factual predicate for the offense was absent, a fortiori, Grainger, who had personally investigated and received the same (and more) information, could not have reasonably concluded otherwise. Sumerall refused to have that conversation with Grainger's captain [ECF 43 ¶¶ 122], which is really the inference to be taken here; they knew plaintiffs had a (recognized by all) legitimate purpose, but it's easier to arrest an innocent man than to have a conversation with a captain or to piss off a superior. Why are Jason and Benjamin different from a regular John-Q public? Because they are First Amendment auditors, that's why.

6

Sixth, Grainger acknowledged he was in a "damned if he does, damned if he doesn't" situation, i.e., that he would either anger his Captain or get the Sheriff's Office sued. [ECF 43 ¶¶ 123-124, 136]. This allegation supports the inference that Grainger himself recognized the arrest lacked legal justification but proceeded anyway because of pressure from his chain of command.

Seventh, Jason Gutterman reminded Newsom and Grainger before his detention that he would only be violating the statute if he did not have a legitimate purpose, which he had explained. [ECF 43 ¶ 183]. Gutterman also pointed out that if the statute were interpreted as a blanket prohibition on entering the zone, then every car driving through the area without picking up students would be subject to arrest. [ECF 43 ¶ 184]. These allegations support the inference that Grainger was on notice of the statute's limitations and, most importantly, acknowledged them.

Eighth, all prosecutions against Jason Gutterman ended without conviction, and the Office of the State Attorney entered a no information, citing the fact that the statute used to arrest Plaintiff was found unconstitutional. [ECF43 ¶¶ 143-145, 167].

Taken together, these allegations establish that Grainger personally knew Plaintiffs had a legitimate purpose within the school safety zone. No reasonable officer, possessing the same knowledge as Grainger, could have believed that probable cause existed to arrest Plaintiffs under § 810.0975(2)(b) when the officer's own investigation had confirmed that the critical element of the offense, the absence

of legitimate business, was not satisfied. Once discovery takes place, it will be fascinating to know if Grainger had specific First Amendment auditor training, including the about district court's injunction in Gray.[2]

### C.  Gray v. Kohl Does Not Control the Analysis, but the Probable Cause Question Does Not Depend on It

Grainger argues that Gray v. Kohl, 568 F. Supp. 2d 1378 (S.D. Fla. 2008), is not binding precedent because it was a Southern District of Florida decision, not an Eleventh Circuit or Supreme Court decision, and only binding precedent can clearly establish a right for qualified immunity purposes. See Gilmore v. Hodges, 738 F.3d 266, 279 (11th Cir. 2013).

Plaintiffs do not contend that Gray alone constitutes clearly established law for qualified immunity purposes (although one might note ignoring Federal District Judges seems unwise to say the least). But none-the-less the argument is a red herring because the qualified immunity analysis does not turn on whether § 810.0975 is constitutional. It turns on whether Grainger had probable cause, or arguable probable cause, to believe that Plaintiffs were violating the statute. As demonstrated above,

---

[2] If a Law Enforcement Officer knows that a statute was declared unconstitutional by a Federal District Court, and that ruling was not challenged by the government, was accepted, and officers were trained not to enforce it because it was unconstitutional, one might suggest that would make the constitutional violation "obviously clear." Discovery should flesh those issues out.

he did not, because the factual predicate for the offense was absent and Grainger personally knew it.

Even under a fully constitutional version of § 810.0975, arresting someone for violating the statute when the officer himself has confirmed the person has a legitimate business purpose is an arrest without probable cause. Grainger's reliance on Michigan v. DeFillippo, 443 U.S. 31, 37-38 (1979), which permits officers to rely on a presumptively valid statute when making a probable cause assessment, is inapposite.

DeFillippo applies when the officer has observed conduct that violates the statute. Here, Grainger knew that Plaintiffs had a legitimate purpose — the very element whose absence is required for criminal liability under the statute. DeFillippo does not authorize an officer to arrest someone when the officer has affirmative knowledge that an indispensable element of the offense is not satisfied.

The 2013 amendment[3] to § 810.0975 did not eliminate the "legitimate business" exception it retained it. Grainger's own motion acknowledges that the amended statute prohibits presence in a school safety zone "without legitimate business in the school safety zone or any other authorization, license, or invitation." [ECF 53 at 11]. Filming a commercial business from a public sidewalk as part of one's employment

---

[3] There was no substantive amendment to the language of the statute for purposes of this case.

9

as a photojournalist constitutes legitimate business within the zone. The Amended Complaint alleges that Plaintiffs' activity had nothing to do with any school [ECF 43 ¶¶ 25-27, 177], that every officer on scene knew this [ECF 43 ¶ 178], and that Grainger himself acknowledged it [ECF 43 ¶ 79]. Under no reasonable interpretation of the statute, pre- or post-amendment, could Plaintiffs' conduct constitute a criminal offense.

The Amended Complaint does not allege that Plaintiffs lacked a legitimate purpose. In fact, it alleges the opposite. The question is not whether the statute can constitutionally regulate presence in a school zone. The question is whether Grainger had arguable probable cause to believe these Plaintiffs were violating it. Based on the well-pleaded allegations, the answer is clearly not even close.

## D.   The Right to Record on Public Property Was Clearly Established

The First Amendment retaliation claim independently survives because the right Plaintiffs were exercising was clearly established at the time. The Eleventh Circuit has long recognized that individuals have "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct" and that the First Amendment protects "the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000). See also Williamson v. Mills, 65 F.3d 155 (11th Cir. 1995) (reversing

10

grant of qualified immunity to officer who seized film and arrested individual for photographing officers).

Smith was decided in 2000, more than twenty years before the November 2021 events at issue. Any reasonable officer in the Eleventh Circuit would have known that arresting individuals for engaging in photography and videography on a public sidewalk implicates the First Amendment. Grainger cannot credibly claim ignorance of this clearly established right. The Amended Complaint alleges facts supporting a plausible inference of retaliatory motive. These include:

(1) Grainger described Plaintiffs as people who "come out here and incite this kind of crap." [ECF 43 ¶ 76].

(2) Grainger told Newsom that Plaintiffs are "the type of people who come out and incite this kind of stuff" and "they knew exactly what they were doing." [ECF 43 ¶¶ 76-77, 176].

(3) In Grainger's presence, a deputy discussed how Plaintiffs were "spewing Constitutional crap." [ECF 43 ¶ 174].

(4) Grainger threatened Jason with the question of whether this was "the mountain he wanted to die on." [ECF 43 ¶ 40].

(5) All Defendant officers recognized Plaintiffs were First Amendment Auditors and disliked them for engaging in that protected activity. [ECF 43 ¶¶ 171-172].

These allegations, taken as true, support the reasonable inference that Grainger's arrest was motivated by animus toward Plaintiffs' exercise of First Amendment-protected activity, rather than by any good-faith assessment of criminal conduct. The law enforcement response Plaintiffs describe is a textbook case of retaliation: officers who knew Plaintiffs were engaged in lawful activity, expressed contempt for that activity, and arrested them anyway.

**E.    The Nieves Exception Provides an Independent Basis for the Retaliation Claim**

Even if this Court were to find arguable probable cause existed (which it should not), the First Amendment retaliation claim survives under the narrow exception recognized in Nieves v. Bartlett, 587 U.S. 391, 406-07 (2019). Under that exception, a plaintiff need not show the absence of probable cause if the plaintiff presents "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. The Supreme Court in Gonzalez v. Trevino, 602 U.S. 653 (2024), clarified that plaintiffs need not produce "virtually identical and identifiable comparators." Rather, objective evidence — such as a showing that no one has ever been arrested for engaging in the same kind of conduct under a longstanding statute is sufficient. Id. at 658.

In <u>Gonzalez</u>, Justice Alito wrote in concurrence that "We emphasized that it [the Nieves exception] is merely a 'narrow qualification' to the general rule. And to illustrate the thinness of this exception, *Nieves* offered the example of a vocal critic of the police who is arrested for jaywalking. The unyielding enforcement of a no-probable-cause requirement in this context would be insufficiently protective of the plaintiff's First Amendment rights because the defendant's animus is a much likelier explanation for such an arrest than the mere existence of probable cause. We chose this example because jaywalking represents the type of relatively benign offense that is "endemic but rarely results in arrest." *Ibid*. <u>Gonzalez v. Trevino</u>, 602 U.S. 653, 665 (2024)(Justice Alito Concurring).

Jaywalking seems rather analogous to being in a school zone, doing nothing wrong. Plaintiff suspects that every single person involved in this case, lawyers included, has been in a school zone without any connection to the school. Are we all subject to arrest simply because a police officer doesn't like us? Are we now to advise clients that it is unlawful to be critical of a police officer while in a school zone because we will be subjected to arrest? Or are they safe so long as they don't talk that "Constitutional crap?"

The Amended Complaint provides precisely the type of objective allegations required under Nieves:

First, a Bay County Press journalist stopped at the scene during the encounter and was neither asked to leave the school safety zone nor arrested, even though the individual was in the same geographic area at the same time. [ECF 43 ¶¶ 71-75]. Meanwhile, that journalist was not engaged in the type of protected First Amendment auditing activity that Plaintiffs were conducting. This is direct, on-scene comparator evidence.

Second, the Amended Complaint alleges that a review of available resources does not show that the Bay County Sheriff's Office has ever arrested any person for violating a school safety zone who was not attempting to contact students or the school itself. [ECF 43 ¶ 181].

Third, a review of available legal research databases does not reveal a single statewide arrest under this statute in which the person's activity had nothing to do with students or the school. [ECF 43 ¶ 182]. This is the type of objective evidence contemplated by both Nieves and Gonzalez: a longstanding statute routinely not enforced against persons whose presence in the zone is unconnected to students or schools, applied here for the first time against individuals engaged in protected speech. These allegations, accepted as true at the pleading stage, satisfy the Nieves exception.

## F.  Qualified Immunity Should Not Be Resolved on a Motion to Dismiss Under These Circumstances

14

Resolving qualified immunity involves fact-intensive inquiries into what a reasonable officer knew or should have known. These inquiries are ill-suited for resolution at the 12(b)(6) stage when, as here, the well-pleaded allegations describe not a reasonable mistake, but a deliberate choice to arrest Plaintiffs despite firsthand knowledge that they were engaged in lawful activity and that the factual predicate for the charged offense was absent.

The allegations paint a picture of an officer who (a) received exculpatory information (as to Jason and Benjamins legitimate purpose) from multiple sources that was confirmed by his own eyes; (b) disregarded all of it; (c) expressed hostility toward Plaintiffs' exercise of constitutional rights; (d) decided to arrest knowing there was not arguable probable cause; and (e) acknowledged that proceeding would "get the Sheriff's Office sued." Whether Grainger in fact possessed the knowledge attributed to him and whether his actions were objectively reasonable under the totality of the circumstances are questions that cannot be resolved on the pleadings alone and are better suited for a developed factual record.

## II. THE VIDEO EVIDENCE DOES NOT DEFEAT PLAINTIFFS' CLAIMS AT THE PLEADING STAGE.

Grainger asks the Court to consider some of the video evidence under the incorporation-by-reference doctrine recognized in Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024). Under that doctrine, the Court may consider a

15

document not referred to or attached to a complaint if the document is (1) central to the plaintiff's claims and (2) undisputed as to authenticity. Id. Plaintiffs do not challenge the authenticity of the video evidence. However, it is not all of the video evidence in the case, and cannot be used to negate the plaintiff's allegations in his complaint. Additionally, Grainger's characterization of that evidence in his motion is the type of factual advocacy that is inappropriate at the 12(b)(6) stage.

Especially because the Defendants have not provided the Court with all the video evidence, including the video of Defendant Sumerall that captures the lengthy discussion between him and Grainger about the legality of the arrest. Grainger emphasizes that students were walking by on the sidewalk and that Plaintiffs were "evasive and confrontational."[4] [ECF 53 at 3, 13]. But on a motion to dismiss, the Court does not weigh evidence or make credibility determinations. Even where video evidence is properly before the Court, it must be viewed in the light most favorable to Plaintiffs. The presence of students nearby does not negate Plaintiffs' legitimate business purpose any more than it negates the legitimate purpose of every

---

[4] Plaintiffs were not evasive and confrontational. Jason Gutterman denied breaking any laws, told the Defendant his legitimate purpose multiple times, and refused to provide identification unless the Deputy had a lawful reason to demand it. Jason Gutterman told him that if it was under threat of arrest, he would provide his identification to the Deputy, who, of course, was uninterested in identifying him; he had already decided to arrest him. Jason Gutterman was not rude; he was not aggressive; he was just not timid, and he insisted that law enforcement follow the law. Ben Gutterman didn't say anything to anyone, but that did not spare him from the Defendants.

other person within 500 feet of the school — including the Bay County Press journalist who was not arrested. [ECF 43 ¶¶ 71-75].

Grainger's characterization of Plaintiffs' conduct as "evasive" conflates the exercise of constitutional rights with suspicious behavior. The Amended Complaint alleges that Grainger told Jason Gutterman he was not being detained [ECF 43 ¶ 30].

An individual's refusal to provide identification when not subject to a lawful detention is the exercise of a constitutional right, not evidence of criminal conduct. And when Jason offered to provide identification under threat of arrest, Grainger did not give him the chance to do so. [ECF 43 ¶¶ 41-42]. The video evidence, far from negating Plaintiffs' claims, is consistent with them.

To the extent the video evidence is subject to competing interpretations, those competing interpretations must be resolved in Plaintiffs' favor at this stage. The video does not "blatantly contradict" the Amended Complaint's factual allegations; at most, it presents factual disputes that are inappropriate for resolution on a motion to dismiss. The court cannot ignore the allegations made in the complaint for things that happened outside of the videos presented.

Finally, if the Court is inclined to treat the Defendants' Motion to Dismiss as a Motion for Summary Judgment, the Plaintiff respectfully requests notice of the Court's intention to do so and the opportunity to conduct discovery and submit all the videos to the Court for its consideration. See Fed. R. Civ. P. 12(d) (Result of

Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Grainger's Motion to Dismiss [ECF 53] in its entirety. The Amended Complaint states plausible claims for First Amendment Retaliation (Count I) and Fourth Amendment False Arrest (Count II) against Grainger, supported by detailed, individualized factual allegations of his personal involvement. Qualified immunity does not shield Grainger at this stage because the Amended Complaint plausibly alleges violations of clearly established constitutional rights — the right to be free from arrest without probable cause and the right to record on public property — and alleges that Grainger possessed personal, firsthand knowledge negating even arguable probable cause for the offense charged. In the alternative, to the extent the Court identifies any pleading deficiency, Plaintiffs respectfully request leave to amend. Finally, if the Court intends to treat the defendant's motion as a motion for summary judgment, the Plaintiff would respectfully request notice so that

18

it may submit any additional material and request the ability to conduct basic discovery.

## CERTIFICATE OF WORD COUNT

I certify that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 4046 words.

Respectfully submitted this 24 day of March 2026.

/s/Kevin Alvarez
Kevin R. Alvarez, B.C.S.
Board Certified in Criminal Trial Law
Law Office of Kevin Alvarez P.A.
522 East Park Ave, Suite 100
Tallahassee, Florida 32301
FBN: 88527
Email: kevinalvarezesq@gmail.com
850-559-0050
ATTORNEY FOR PLANTIFF JASON AND BENJAMIN GUTTERMAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following on this 24th day of March 2026:

**JEFFREY JAMES GROSHOLZ**
**JOHN DAVID MARSEY**
**KAYLA ELIZABETH PLATT RADY**
RUMBERGER KIRK & CALDWELL PA - TALLAHASSEE FL
101 NORTH MONROE STREET
SUITE 1050
TALLAHASSEE, FL 32301
850-222-6550

Email: jgrosholz@rumberger.com
Email: dmarsey@rumberger.com
Email: krady@rumberger.com
ATTORNEYS FOR DEFENDANT CITY OF LYNN HAVEN

**ALYSSA M YARBROUGH**
**JENNIFER ALANE HAWKINS**
**WILLIAM G WARNER**
WARNER LAW FIRM - PANAMA CITY FL
501 W 11TH STREET SUITE A
PANAMA CITY, FL 32401
850-784-7772
Email: alyssayarbrough@warnerlaw.us
Email: jenniferhawkins@warnerlaw.us
Email: billwarner@warnerlaw.us
ATTORNEYS FOR DEFENDANT SHERIFF AND DEPUTIES

**JOSHUA BRIAN WALKER**
WALKER REVELS GRENINGER PLLC - ORLANDO FL
189 S ORANGE AVENUE
SUITE 1600
ORLANDO, FL 32801
407-789-1830
Fax: 321-251-2990
Email: jwalker@wrg.law
*ATTORNEY FOR DEFENDANT SUMERALL*

**BEN A ANDREWS**
**CHAD WAYNE DUNN**
**NICK LECAKES**
PENNINGTON P.A.
215 S MONROE ST
SUITE 200
TALLAHASSEE, FL 32301
850-222-3533
Email: bandrews@penningtonlaw.com
Email: cdunn@penningtonlaw.com
ATTORNEYS FOR DEFENDANT NEWSOM

By:

/s/Kevin Alvarez
Kevin Alvarez, B.C.S.
Board-Certified Criminal Trial Law
Florida Bar Number 88527
Law Office of Kevin Alvarez P.A.
522 East Park Ave. Suite 100
Tallahassee, Florida 32301
Phone (850) 559-0050
Fax: (850) 999-7563
KevinAlvarezesq@gmail.com
Attorney for Plaintiff's JASON and BENJAMIN GUTTERMAN