IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JASON GUTTERMAN and
BENJAMIN GUTTERMAN,

      Plaintiffs,

v.                                                      Case No. 5:25-cv-230-AW-MJF
CITY OF LYNN HAVEN, et al.,
      Defendants.
_____/

**<ins>PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT CROSBY'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT [ECF 51]</ins>**

Plaintiffs, JASON GUTTERMAN and BENJAMIN GUTTERMAN, by and

through undersigned counsel, respectfully submit this Response in Opposition to

Defendant Austin Crosby's Motion to Dismiss Plaintiffs' Amended Complaint [ECF

51] and state as follows:

**<ins>INTRODUCTION</ins>**

Defendant Crosby's Motion to Dismiss asks this Court to do what it cannot

do at the Rule 12(b)(6) stage: weigh evidence, resolve factual disputes, and credit

the Defendant's version of events over the well-pled allegations in the Amended

Complaint. The Amended Complaint alleges, in detail, that Defendant Crosby was

present during the encounter, heard the exchange between Sergeant Grainger and

1

Jason Gutterman, observed that there was no arguable probable cause for an arrest, and yet actively assisted in the detention and handcuffing of Benjamin Gutterman. [ECF 43 ¶¶ 43, 102–107, 204.] These are not threadbare recitals of legal conclusions. They are specific factual allegations that, accepted as true, state plausible claims for relief under both Count II (false arrest) and Count III (failure to intervene).

Crosby's motion fundamentally mischaracterizes the nature of his involvement. He was not a passive bystander who happened upon the scene. He physically grabbed Benjamin Gutterman's arms and helped place a minor in handcuffs, knowing that the arrest lacked probable cause. [ECF 43 ¶¶ 106, 204.] His motion should be denied.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint may

2

not be so dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Lopez v. First Union Nat. Bank of Florida, 129 F.3d 1186, 1189 (11th Cir. 1997)(internal citations omitted). Importantly, at this stage, the Court does not weigh evidence or resolve disputed facts.

To the extent Defendant Crosby asks this Court to consider video evidence at the motion to dismiss stage under the incorporation-by-reference doctrine, any such consideration must be limited to facts that are undisputed and central to Plaintiffs' claims. Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024). The video evidence does not blatantly contradict the well-pled allegations in the Amended Complaint; to the contrary, it supports them. Where the video is ambiguous or subject to competing interpretations, the Court must draw inferences in favor of the Plaintiffs at this stage.

## **ARGUMENT**

### **I. The Amended Complaint States a Plausible Claim for False Arrest Against Crosby (Count II).**

Defendant Crosby's motion focuses almost entirely on the failure-to-intervene theory and largely ignores the fact that Crosby is also named as a defendant in Count II for directly participating in the false arrest of Benjamin Gutterman. The Amended

3

Complaint does not allege that Crosby merely stood by. It alleges that Crosby "actively assisted in the detention and handcuffing of BENJAMIN GUTTERMAN," that "CROSBY grabbed BENJAMIN GUTTERMAN'S arms and helped secure him in handcuffs," and that "CROSBY's actions resulted in BENJAMIN GUTTERMAN being placed in the back of a sheriff's vehicle." [ECF 43 ¶¶ 106–107, 204.]

This is direct participation in an arrest, not mere presence. An officer who physically handcuffs a plaintiff and places him in a patrol vehicle has participated in the seizure, and is subject to liability if that seizure lacked probable cause. The Amended Complaint alleges precisely that: Crosby grabbed Benjamin Gutterman's arms, secured him in handcuffs, and caused him to be placed in a patrol vehicle— all without probable cause. [ECF 43 ¶¶ 81, 106–107, 149–150, 204–205.] Accepted as true, these allegations state a plausible claim for false arrest under the Fourth Amendment.

**II. The Amended Complaint States a Plausible Claim for Failure to Intervene Against Crosby (Count III).**

Crosby contends that because he was a lower-ranking officer who was not in Grainger's chain of command, he cannot be liable for failure to intervene. In support, Crosby cites <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 737 (11th Cir. 2010), for the proposition that "[m]erely being present with the arresting officers at the scene

is not enough." But Crosby's reliance on <u>Brown</u> is misplaced because it ignores the critical distinction between that case and this one.

In *Brown*, the court found qualified immunity where the non-intervening officer played no active role in the arrest. Here, by contrast, the Amended Complaint alleges that Crosby did not merely stand by, he *actively assisted* in the detention. He physically grabbed Benjamin Gutterman's arms and helped secure him in handcuffs. [ECF 43 ¶¶ 106, 204.] An officer who physically assists in an arrest cannot claim he was "merely present." Moreover, the Amended Complaint alleges that Crosby witnessed the entire exchange between Grainger and Jason Gutterman in which it became apparent there was no probable cause [ECF 43 ¶¶ 43, 102–104], and that Crosby "could see that there was not arguable probable cause for an arrest" [ECF 43 ¶ 104]. Despite this knowledge, Crosby "failed to intervene in the unlawful detention of both Plaintiffs." [ECF 43 ¶ 105.]

The Amended Complaint further alleges that Crosby "knew that the arrests and detentions were unlawful" and yet "failed to intervene to protect the constitutional rights of Plaintiffs." [ECF 43 ¶¶ 150–151.] These allegations, taken as true, plausibly state a failure-to-intervene claim even under the framework Crosby cites. Crosby had knowledge of the constitutional violation, an opportunity to intervene, and failed to do so—indeed, he went further and actively participated.

**III. Defendant Crosby Is Not Entitled to Qualified Immunity at the Motion to Dismiss Stage.**

Crosby raises qualified immunity as an affirmative defense and argues that, even if the complaint alleges a constitutional violation, the right was not "clearly established." While Plaintiffs do not dispute that Crosby was performing discretionary functions and that the burden therefore shifts to Plaintiffs to show qualified immunity is inapplicable, the Amended Complaint's allegations defeat qualified immunity at this stage for two independent reasons.

*A. There Was No Arguable Probable Cause, and the Complaint Alleges Crosby Knew It.*

The qualified immunity inquiry for a false arrest claim turns on whether there was "arguable probable cause" i.e. whether a reasonable officer in the same circumstances could have believed that probable cause existed. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998). The Amended Complaint alleges specific facts showing that no reasonable officer could have believed probable cause existed here.

First, the statute under which Plaintiffs were arrested, section 810.0975(2)(b), Florida Statutes, only prohibits being within a school safety zone without a "legitimate business purpose." [ECF 43 ¶ 46.] The Amended Complaint alleges that

all officers on scene, including Crosby, knew that Plaintiffs had a legitimate purpose: they were photojournalists filming the UPS facility with professional camera equipment from a public sidewalk. [ECF 43 ¶¶ 12–15, 23, 54–60, 177.] Swann, who initiated the encounter, confirmed to Grainger that Plaintiffs had not been filming at or around the school and were filming at the UPS facility. [ECF 43 ¶ 34.] Grainger himself acknowledged that Plaintiffs' connection to UPS was irrefutable. [ECF 43 ¶¶ 134–135.] Sumerall admitted there was no evidence Plaintiffs were doing anything nefarious and acknowledged that Plaintiffs were simply filming at the UPS facility. [ECF 43 ¶¶ 119–121.] A confession on video is not required to proceed past the Motion to Dismiss stage and based upon the statements of Grainger and Sumerall on video, it is logical to conclude that Crosby had the same, almost instant recognition that Plaintiffs were first amendment auditors and that the arrest lacked probable cause.

Second, the Amended Complaint alleges that the arresting officers themselves recognized the arrest was unlawful. Grainger specifically stated that he would either anger his captain or "get the sheriff's office sued." [ECF 43 ¶¶ 124, 136.] Sumerall admitted he would not arrest Plaintiffs without evidence they were doing anything nefarious—and acknowledged there was no such evidence. [ECF 43 ¶¶ 119–120.] When the officers who initiated and authorized the arrest themselves recognized the absence of probable cause, a lower-ranking officer who witnessed the same

exchange and observed the same circumstances cannot claim he reasonably believed probable cause existed.

Third, the Amended Complaint alleges that this statute had never been used to arrest anyone whose activity had nothing to do with students or the school. [ECF 43 ¶¶ 181–182.] A reasonable officer confronted with the same facts, photojournalists with professional equipment filming a UPS facility from a public sidewalk, who had explained their legitimate purpose, and who were confirmed not to have been filming the school, could not reasonably conclude that probable cause existed to arrest them for trespassing in a school safety zone.

The Amended Complaint alleges that Crosby was present during the exchange, heard the discussion, and "could see that there was not arguable probable cause for an arrest." [ECF 43 ¶¶ 43, 103–104.] These factual allegations, taken as true, defeat arguable probable cause.

### B. The Unlawfulness of the Arrest Was Readily Apparent Under Existing Law.

Crosby argues that Gray v. Kohl, 568 F. Supp. 2d 1378 (S.D. Fla. 2008), is not binding precedent and therefore does not "clearly establish" the unconstitutionality of section 810.0975(2)(b). [ECF 51 at 11–12.] Even assuming Gray is not binding on officers in Bay County for qualified immunity purposes, it

8

does not follow that Crosby is entitled to qualified immunity. Plaintiffs' argument does not depend on Gray alone.

The Eleventh Circuit employs two methods to determine whether a right is clearly established. The first looks to binding case law. The second asks whether the officer's conduct "lie[s] so obviously at the very core of what the [Fourth] Amendment prohibits" that "the unlawfulness of the conduct would be readily apparent to the officer." Edwards v. Shanley, 666 F.3d 1289, 1296 (11th Cir. 2012).

Here, the Amended Complaint alleges that every officer on scene knew that Plaintiffs had a legitimate purpose to be within the school safety zone, that Plaintiffs were not filming the school, that Plaintiffs were filming the UPS facility, and that there was no evidence of any nefarious activity. [ECF 43 ¶¶ 34, 79, 87–89, 119–121, 131–135, 177.] The Amended Complaint further alleges that the arresting officers themselves recognized the arrest lacked probable cause. [ECF 43 ¶¶ 119–120, 124, 136.] Under these circumstances, it would be "readily apparent" to any reasonable officer that arresting individuals who have a known, acknowledged legitimate purpose within a school safety zone. under a statute that only criminalizes presence *without* such purpose, violates the Fourth Amendment. No case directly on point is necessary when the conduct so obviously falls within the core prohibition.

Crosby also argues that Plaintiffs were "evasive and confrontational." [ECF 51 at 14.] This characterization is improper at the motion to dismiss stage, where the Court must accept the Amended Complaint's allegations as true. The Amended Complaint alleges that Plaintiffs explained their purpose and offered to show their video footage. [ECF 43 ¶¶ 23, 27, 36, 57.] More importantly, even if Plaintiffs asserted their constitutional rights in a manner the officers found disagreeable, the exercise of First Amendment rights and the assertion of Fourth Amendment protections cannot provide the basis for probable cause. The Amended Complaint alleges that a deputy referred to Plaintiffs' constitutional assertions as "Constitutional crap" [ECF 43 ¶¶ 174–175], and Grainger told Newsom that "these are the people that come out here and incite this kind of crap." [ECF 43 ¶ 176.]. Those Deputies said, as kids these days would say, "the quiet part out loud". It's a fair assumption all the other law enforcement officers felt the same way, at least at this stage. It's an extremely reasonable inference.

**IV. Crosby's Reliance on Video Evidence Is Improper at This Stage.**

Crosby urges this Court to resolve this motion based on video evidence under the incorporation-by-reference doctrine. See Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024). But the incorporation-by-reference doctrine does not transform a motion to dismiss into a motion for summary judgment. A court may

consider video evidence on a motion to dismiss only where the video "blatantly contradicts" the plaintiff's allegations such that no reasonable jury could credit them. Where the video is ambiguous, subject to competing interpretations, or does not clearly refute the complaint's factual allegations, the Court must accept the well-pled allegations as true.

Here, Crosby does not identify any specific allegation in the Amended Complaint that is blatantly contradicted by the video evidence. The videos show Crosby arriving on scene, show the interaction between officers and Plaintiffs, and show the physical arrest. These are consistent with the Amended Complaint's allegations. Whether Crosby had knowledge that the arrest lacked probable cause, whether he could have intervened, and whether his participation was knowing and willful are factual questions that cannot be resolved on a motion to dismiss.

## V. The Selective Enforcement Further Demonstrates Absence of Probable Cause.

The Amended Complaint alleges that a Bay County Press journalist stopped at the scene and was neither told to leave the school safety zone nor arrested. [ECF 43 ¶¶ 71–75.] This selective enforcement, arresting Plaintiffs for being within a school safety zone while allowing another journalist to remain, further undermines any claim of arguable probable cause and supports the inference that the arrest was

motivated by hostility toward "First Amendment Auditors" rather than genuine concern about the school safety zone statute.

## CONCLUSION

The Amended Complaint alleges specific facts showing that Defendant Crosby actively participated in the false arrest of Benjamin Gutterman by physically grabbing his arms and helping to handcuff him, that Crosby knew there was no arguable probable cause for the arrest, and that Crosby failed to intervene despite his knowledge and opportunity to do so. These allegations, accepted as true, state plausible claims for relief under both Count II and Count III. Crosby is not entitled to qualified immunity at the motion to dismiss stage because the Amended Complaint alleges facts showing that the arrest so obviously lacked probable cause that its unlawfulness was readily apparent. Defendant Crosby's Motion to Dismiss should be denied.

## CERTIFICATE OF WORD COUNT

I certify that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 2523 words.

Respectfully submitted this 26 day of March 2026.

/s/Kevin Alvarez
Kevin R. Alvarez, B.C.S.

Board Certified in Criminal Trial Law
Law Office of Kevin Alvarez P.A.
522 East Park Ave, Suite 100
Tallahassee, Florida 32301
FBN: 88527
Email: kevinalvarezesq@gmail.com
850-559-0050
ATTORNEY FOR PLANTIFF JASON AND BENJAMIN GUTTERMAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following on this 26th day of March 2026:

**JEFFREY JAMES GROSHOLZ**
**JOHN DAVID MARSEY**
**KAYLA ELIZABETH PLATT RADY**
RUMBERGER KIRK & CALDWELL PA - TALLAHASSEE FL
101 NORTH MONROE STREET
SUITE 1050
TALLAHASSEE, FL 32301
850-222-6550
Email: jgrosholz@rumberger.com
Email: dmarsey@rumberger.com
Email: krady@rumberger.com
ATTORNEYS FOR DEFENDANT CITY OF LYNN HAVEN

**ALYSSA M YARBROUGH**
**JENNIFER ALANE HAWKINS**
**WILLIAM G WARNER**
WARNER LAW FIRM - PANAMA CITY FL
501 W 11TH STREET SUITE A
PANAMA CITY, FL 32401
850-784-7772
Email: alyssayarbrough@warnerlaw.us
Email: jenniferhawkins@warnerlaw.us
Email: billwarner@warnerlaw.us
ATTORNEYS FOR DEFENDANT SHERIFF AND DEPUTIES

**JOSHUA BRIAN WALKER**
WALKER REVELS GRENINGER PLLC - ORLANDO FL
189 S ORANGE AVENUE
SUITE 1600
ORLANDO, FL 32801
407-789-1830
Fax: 321-251-2990
Email: jwalker@wrg.law
*ATTORNEY FOR DEFENDANT SUMERALL*


**BEN A ANDREWS**
**CHAD WAYNE DUNN**
**NICK LECAKES**
PENNINGTON P.A.
215 S MONROE ST
SUITE 200
TALLAHASSEE, FL 32301
850-222-3533
Email: bandrews@penningtonlaw.com
Email: cdunn@penningtonlaw.com
ATTORNEYS FOR DEFENDANT NEWSOM

By:

/s/Kevin Alvarez
Kevin Alvarez, B.C.S.
Board-Certified Criminal Trial Law
Florida Bar Number 88527
Law Office of Kevin Alvarez P.A.
522 East Park Ave. Suite 100
Tallahassee, Florida 32301
Phone (850) 559-0050
Fax: (850) 999-7563
KevinAlvarezesq@gmail.com
Attorney for Plaintiff's JASON and BENJAMIN GUTTERMAN